UNITED STATES DISTRICT COURT

DISTRICT OF SOUTH DAKOTA

SOUTHERN DIVISION

| | | |
|---|---|---|
| GENE E. DUDLEY, SR., | ) | Civ. 07-4082-AWB |
| | ) | |
| Petitioner, | ) | |
| | ) | |
| vs. | ) | MEMORANDUM OPINION |
| | ) | |
| J.D. WHITEHEAD, Warden, | ) | |
| | ) | |
| Respondent. | ) | |

Petitioner herein, a prisoner at the Federal Prison Camp (FPC) at
Yankton, South Dakota, has submitted a Petition for Writ of Habeas Corpus
under 28 U.S.C. § 2241. Docket 1. The Court initially dismissed the petition
when it learned that Petitioner had been transferred to a Bureau of Prisons
(BOP) facility outside of the District of South Dakota. Docket 9. After
Petitioner was transferred back to South Dakota and this Court's jurisdiction
was reestablished, the Court reconsidered that dismissal and ordered the
Government to respond to the petition. Docket 22. The Government promptly
filed a response to the habeas petition as well as a response to two of
Petitioner's other motions. Docket 34, 35. For the reasons stated below,
Petitioner's Petition for Writ of Habeas Corpus is dismissed and all pending
motions are denied.

**BACKGROUND**

Petitioner is serving a 140-month sentence of incarceration following
convictions for distribution of heroin, distribution of cocaine, possession with
intent to distribute cocaine, possession with intent to distribute marijuana,

and felon in possession of a firearm.  From October 2003 to September 2006,
Petitioner participated in the Life Connections Program (LCP) available through
the BOP.  Docket 1, page 10.  After he successfully completed the LCP,
Petitioner states that he was approved for a transfer to the FCP at
Leavenworth, Kansas, which is very close to his release site.  However, claims
Petitioner, that transfer was rescinded and he was sent to FPC Yankton.
Regarding his transfer to FPC Yankton, Petitioner claims that he exhausted all
administrative remedies in seeking a different transfer to FPC Leavenworth
prior to filing this federal action; he also claims that he has sought review of
the transfer decision outside of the formal remedial processes.  Docket 1, page
10-11.

Petitioner brings many claims to challenge his placement at FPC
Yankton.  First, he alleges that his participation in the LCP requires the BOP to
exert every effort to place him in a facility close to his release site, in order to
encourage a supportive relationship with faith communities that will assist him
in his post-release transition.  Id. at 14-15.  Specifically, Petitioner states that
the Operations Memorandum 017-2004 (5360) "entails a binding agreement"
that "requires continuing programming under the supervision of support staff
after LCP participants receive their certificate for successfully completing that
phase of the program."  Id. at 14.  Further, argues Petitioner, the LCP
agreement "gives Petitioner the expectation that once the program has been
successfully completed that additional efforts will made [sic] to locate LCP

2

graduates close to their legal release residence for the remaining portions of the LCP. Not just an attempt." Id. at 33.

Second, Petitioner alleges that the BOP's reliance upon a BOP regulation to explain the alleged retraction of his transfer to FPC Leavenworth was improper, as the regulation was not in effect until months after his transfer to FPC Leavenworth had been approved. Thus, argues Petitioner, the BOP's use of this regulation violated the Administrative Procedure Act (APA). Docket 1, page 12; 13; 34-35. Petitioner also alleges an APA violation arising out of the improper involvement of certain BOP personnel in his transfer decision. Id. at 12, 13, 34. Next, Petitioner alleges that the BOP improperly failed to consider the five factors in § 3621 in making its decision regarding its determinations regarding his placement in a Community Corrections Center (CCC) for the last months of his sentence. Docket 1, page 1, 9, 11, 31, 33, 36. Finally, Petitioner addresses the BOP's decisions to transfer other inmates to FPC Leavenworth, particularly participants in the BOP's Drug and Alcohol Program, in spite of its denial of Petitioner's transfer request due to overcrowding. Id. at 13, 14, 33. Petitioner seems to claim that these decisions violate the statutory prohibition against favoring prisoners because of their social or economic status.

In a "Supplemental Pleading" filed January 22, 2008, Petitioner discusses additional allegations of "unreasonable and arbitrary actions" in relation to his date to be transferred to a Community Corrections Center (CCC). Docket 26. Specifically, Petitioner points to statutory provisions that he claims require the BOP to "release" him to the CCC placement on July 5, 2008; he

3

states that the BOP is improperly extending that date to July 8, 2008.  He also makes vague references to improper BOP decisions regarding his good-time credit.

The Court notes that Petitioner has filed several additional motions regarding this action.  The Court takes up these motions in turn.

## DISCUSSION

### A.    Petitioner's placement at FPC Yankton despite his participation in the Life Connections Program

Petitioner has already filed a § 2241 habeas petition on this matter in this Court.  See CV 06-04172.  That petition was dismissed by United States District Judge Karen E. Schreier.  In its dismissal, the Court looked to the BOP's statutory authority in 18 U.S.C. § 3621(b) in concluding that "the BOP is under no obligation to transfer Dudley to FPC Leavenworth as a result of his participation in the LCP."[1]  CV 06-04172, Docket 17, page 7.  Looking at Operations Memorandum 017-2004 (5360) (hereinafter OM 5360), which sets forth the BOP's policies regarding the LCP, the Court stated that despite any language in OM 5360 which Petitioner may construe as a BOP commitment to

---

[1]    The Court in its consideration of Petitioner's first habeas petition concluded that Petitioner had failed to exhaust available administrative remedies regarding his complaints over his placement at FPC Yankton despite his LCP participation.  The Court recognized that this failure to exhaust justified dismissal on that ground alone, but went on to decide that even if Petitioner had exhausted his administrative remedies, he still would not be entitled to relief.  CV 06-04172, Docket 17, page 5.  Therefore, the fact that Petitioner now appears to have exhausted his administrative remedies makes no difference to the Court's decision today, since the earlier decision on the merits of Petitioner's habeas claim prohibits this Court from reconsidering those parts of the Petitioner's petition that mirror his earlier habeas request.

4

place LCP participants in accordance with their wishes, "the BOP retains its authority under § 3621 to determine where individual prisoners are incarcerated." Id. at 6.  Finally, the Court noted that the OM 5360 ¶ 10 only says that the BOP will make "every effort" to place a LCP participant "close to the released destination."  "Nothing in Operations Memorandum 5360 suggests that the BOP is required to make any effort to house an inmate who has completed the LCP in the 'closest' facility to the inmate's release point." Id. at 6-7.  For these reasons, the Court dismissed Petitioner's § 2241 habeas petition.

In the immediate petition before the Court today, many of the claims are identical to the claims Petitioner previously presented in his earlier § 2241 petition.  Particularly, many of Petitioner's complaints relate to the failure of the BOP to place him in a prison of his preference after he successfully completed the LCP.  Docket 1, page 4, 5, 9, 10-11, 14,-15, 23, 31, 33, 35-36.

28 U.S.C. § 2244(a) provides:

> No circuit or district judge shall be required to entertain an application for a writ of habeas corpus to inquire into the detention of a person . . . if it appears that the legality of such detention has been determined by a judge or court of the United States on a prior application for a writ of habeas corpus.

This provision applies to habeas petitions brought under § 2241.  Simon v. United States, 359 F.3d 139, 142-43 (2nd Cir. 2004); Shabazz v. Keating, 242 F.3d 390, 392 (10th Cir. 2000) (unpublished) (stating that 2244(a) means that "we are not required to entertain a § 2241 petition if the legality of the detention has been determined by a prior application"); Davidson v. U.S. Dept.

Of Justice, 239 F.3d 366 (5th Cir. 2000) (per curium, unpublished); see also

Phelps v. U.S. Federal Government, 15 F.3d 735, 737-38 (8th Cir. 1994)

(affirming district court's application of pre-AEDPA version of § 2244 to find an

abuse of the writ in a successive § 2241 petition); see generally Schlup v. Delo,

513 U.S. 298, 317-20, 115 S. Ct. 851, 130 L. Ed. 2d 808 (1995) (holding that

res judicata does not apply to habeas petitions and stating that the rules

related to abuse of the writ are the means to avoid second or successive

petitions).

Here, the Court must dismiss under 28 U.S.C. § 2244(a) that portion of

Petitioner's complaint which is identical to those claims advanced in his earlier

§ 2241 petition, CV 06-04172.  Accordingly, the Court dismisses those portions

of his petition which concern the BOP's placement decision in relation to

Petitioner's participation in the LCP.

**B.      Petitioner's allegations that the BOP violated the APA**

The claims in Petitioner's latest petition go beyond the ones he previously

filed, and so the Court addresses these additional claims which have not been

reviewed by another Court.  These claims include several references to the

Administrative Procedure Act (APA).  The Court addresses each of these

allegations in turn.

**1.      Application of Program Statement 5100.08 to Leavenworth
transfer**

Petitioner states that his transfer to FPC Leavenworth was approved in

Summer 2006.  On September 12, 2006, the BOP adopted a new policy about

Inmate Security Designation and Custody Classification, which addresses transfers between BOP facilities.  See BOP Program Statement 5100.08. Warden Whitehead referred to PS 5100.08 in two communications to Petitioner regarding his placement at FCP Yankton, once in November 2006, and once in April 2007.  Docket 1, page 42, 58.  Petitioner provides no further documentation regarding any official references by the BOP to PS 5100.08, although Petitioner does make numerous references himself to the policy.

Regarding these facts, Petitioner seems to complain that the BOP improperly applied PS 5100.08 retroactively to his transfer to FPC Leavenworth, which had been approved prior to passage of PS 5100.08. Docket 1, page 13, 34, 36-37.  Thus, states Petitioner, his transfer to FPC Leavenworth was improperly rescinded based on a policy adopted only after the transfer had already been authorized.

First, Petitioner does not provide any convincing evidence that a transfer to Leavenworth was ever actually approved.  He did state that a BOP teaming in 2006 recommended a transfer to FPC Leavenworth, but that a final decision was delayed.  Docket 1, page 10.  The exhibits which Petitioner includes in his petition indicate that he contacted several individuals to protest his approved transfer to FPC Yankton, all to no avail.  Docket 1, page 43, 46, 48.  He provides no such documentation which indicates that a transfer to FPC Leavenworth had ever been approved.

Regardless, even if a transfer to FPC Leavenworth had been authorized by the BOP, it is clear to the Court that Petitioner's allegation that PS 5100.08

7

was improperly applied retroactively to this transfer is wrong.  Examining
Warden Whitehead's communication with Petitioner, which seems to be the
only official reference to PS 5100.08, the Court sees that the Warden did not
refer to PS 5100.08 to explain Petitioner's placement at FPC Yankton instead of
FPC Leavenworth.  Docket 1, page 58 (dated April 12, 2007); Docket 1, page 42
(dated November 7, 2006). Instead, it appears to this Court that Whitehead
merely referred to PS 5100.08 in reference to any *future* transfer requests from
Petitioner.  Id.  The Warden cites to the portion of PS 5100.08 which states that
once a prisoner has been transferred to a facility within 500 miles of his release
residence, no further referrals will be made to permit subsequent transfers
closer to the prisoner's release residence.  Id.

The Court believes that Warden Whitehead's reference to PS 5100.08 is
not for the purposes of explaining Petitioner's transfer to FPC Yankton, but
instead to explain that Petitioner is not entitled to any future transfers, since
Yankton is within 500 miles of his release residence.  Thus, Petitioner's claim
that PS 5100.08 was improperly applied to nullify an earlier transfer is
incorrect, and the Court finds that the BOP did not improperly apply PS
5100.08 to Petitioner's placements.  For these reasons,  this portion of the
petition must be dismissed.


## 2.    Improper BOP delegation of transfer authority

Reading Petitioner's complaint broadly, as the Court is required to do
considering Petitioner's pro se status, the Court notes that Petitioner seems to

8

object to the decision makers involved in his transfer to FPC Yankton.

Specifically, Petitioner protests that, as an LCP participant, he was "under the

transfer of National Chaplain David Morton" and, therefore, Steve Aycock and

the Designation and Sentencing Computation Center (DSCC) did not have the

authority to alter his transfer to FPC Leavenworth.  Docket 1, page 12; see also

id. at 13, 34.  Petitioner goes on to state that DSCC only gained authority to

transfer with the passage of PS 5100.08, and that no such power existed under

PS 5100.07, which was in effect at the time of his transfer.  Id. at 34, 57; see

also id. at 59 (providing an excerpt from PS 5100.08, page 1, which states that

the new policy incorporates "the movement of most designation/redesignation

functions . . . to the Designation and Sentence Computation Center (DSCC)").

The Court's review of both policies shows that while PS 5100.07 does not

contain an explicit reference empowering the DSCC to authorize transfers for

training purposes, as PS 5100.08 does, the older policy PS 5100.07 does refer

in many places to a "Regional Designator" as a position which can redesignate

or transfer inmates.  See PS 5100.07, page 126 (stating that "[r]outine transfers

are submitted to the Regional Designator via Request for Transfer/Application

of a Management Variable"); see also id. at 23, 123, 130, 131, 132.  In his letter

to Steve Aycock, Petitioner includes Aycock's job title – "Regional Designator."

Docket 1, pages 43, 57.  Under PS 5100.07, it is clear that a Regional

Designator does have the authority to make decisions regarding an inmate's

transfer to another BOP facility, and therefore no impropriety arises when

Regional Designator Aycock authorized Petitioner's transfer to FPC Yankton.

Petitioner states elsewhere that the "DSCC usurped [the Warden's] authority" with regard to his placement and his ability to continue his participation in the LCP.  Docket 1, page 37.  Again, the policies make it clear that Regional Designator Aycock had the authority to place Petitioner at FPC Yankton.  Finally, Petitioner claims that LCP staff retain exclusive control to authorize transfers of LCP participants, divesting Aycock and other BOP personnel of any authority over such transfers.  See id. at 12 (stating that OM 5360 which covers LCP "controls LCP transfers and not

¶ 5100.08 . . . Petitioner being LCP participant is under the transfer authority of National Chaplin David Morton").  However, in the Court's review of OM 5360, it finds no language whatsoever that LCP participants are treated differently with respect to transfer procedures, and it appears to the Court that Petitioner is reading things into BOP policies which are simply not there.

Because of these reasons, Petitioner's complaints on these grounds must fail.

### 3.  Overcrowding as justification for denial of request for transfer to Leavenworth

Finally, in his petition, Petitioner also states that his placement at FPC Leavenworth was prevented because of overcrowding.  Docket 1, page 9, 10, 13, 31.  He goes on to complain that other inmates were transferred to Leavenworth, especially participants in the Drug and Alcohol Program (DAP), while he was denied such a transfer, and he alleges that these decisions were

10

due to "monetary and budget reasons."  Docket 1, page 13; see also id. at 9,

31.  Petitioner seems to conclude that these transfers, which benefitted people

in the DAP over people in LCP, violated the statutory prohibition in 18 U.S.C. §

3621(b) against any "favoritism given to prisoners of high social or economic

status" in placement determinations.  See Docket 1, page 14 (stating that "the

LCP received three hundred million ($300,000,000) bucks for the pilot program

. . . Petitioner further avers that Warden [sic] excuses for lack of funding is a

sham.  DAP provides this Warden with millions in funding but yet the DAP

concerns overrides [sic] LCP for the love of money"); id. at 33 (stating that

"Warden utilizes social and economic status to sway his determination for not

indulging RRC"); id. at 37 (stating that the Warden's actions demonstrate

"favoritism toward DAP due to economic gains and favoritism in inmates [sic]

placements due to high social order").

The Court notes that 18 U.S.C. § 3621(b) permits the BOP to consider

"the resources of the facility contemplated" in making placement

determinations, explicitly authorizing the BOP to consider both the capacity of

a facility as well as any impact transfer of an inmate may have upon the

facility's resources.  Thus, even assuming Petitioner's allegations are true, and

the BOP is favoring DAP prisoners over LCP participants for monetary reasons,

the BOP still has not acted outside of its statutory authority as discussed in 18

U.S.C. § 3621.  Further, it is clear to this Court that the BOP's decisions

regarding placement of DAP and LCP participants do not implicate the

prohibition in § 3621(b) that the BOP refrain from favoring prisoners of high

social or economic status.  An inmate's involvement in DAP or LCP or other BOP programs has nothing to do with his or her social or economic status, and Petitioner does not convince this Court otherwise.  Indeed, the Court thinks that inmates of all social and economic status utilize and benefit from the drug and alcohol treatment program, and the same is true for the Life Connections Program.  Petitioner cannot stretch the language in § 3621(b) so far as to prohibit such decisions of the BOP.  For these reasons, Petitioner does not have a valid § 2241 claim regarding these allegations.

### 4.   Failure to properly evaluate Petitioner's transfer to a Community Corrections Center

Finally, Petitioner complains in his petition that the BOP failed to timely consider the five factors discussed in § 3621(b) in making determinations as to his placement in a Community Corrections Center (CCC) or a Residential Reentry Center (RRC).  Petitioner argues that the BOP's policy of making pre-release custody determinations pursuant to 18 U.S.C. § 3624(c) within 11-13 months of the inmate's release date is improper.[2]  Instead, Petitioner argues, the BOP must consider the five § 3621(b) factors once the inmate reaches his 10 percent date, or that time at which he has only 10 percent of his sentence remaining.  Id. at 1, 3, 11, 31-32, 33, 36.

---

[2] The Court notes that the recently-passed Second Chance Act of 2007 alters the BOP's authority regarding to CCC placement, permitting a pre-release CCC placement of up to 12 months.  See Docket 44-2, page 2.  An internal BOP memorandum states that this change in law means that inmates must be reviewed for CCC placement 17-19 months before projected release dates.  Id. at 3; see also Docket 45, pages 2-3.

The Eighth Circuit has stated that BOP determinations regarding CCC placement require the BOP to consider all of the factors discussed in 18 U.S.C. § 3621(b) before placing an inmate in a pre-release placement in a CCC. Fults v. Sanders, 442 F.3d 1088, 1092 (8th Cir. 2006); see also Miller v. Whitehead, No. 07-1651, slip op. at 7-8 (8th Cir. May 30, 2008) . At this time, the Government has demonstrated that the BOP considered these § 3621(b) factors in making its determination regarding Petitioner's CCC placement. Docket 44 (stating that Petitioner was reevaluated under the Second Chance Act of 2007 and a six-month placement was determined to be appropriate). The Court agrees that the remedy for this portion of Petitioner's complaint would be "immediate consideration for halfway house placement under the factors set forth in statute." Docket 35, page 4; see also Docket 44, page 2. Thus, since the BOP has already determined that Petitioner should be transferred to a CCC on July 7, 2008, this remedy has already occurred and Petitioner's claim on these grounds is moot and must be dismissed.

As stated above, Congress has delegated to the BOP significant discretion in deciding where inmates are housed. See 18 U.S.C. § 3621(c). Petitioner has given this Court no reason to believe that the BOP acted outside of this statutory authority or even that the BOP failed to apply its own policies properly in placing him at FPC Yankton. As Petitioner has failed to bring any new, valid claim which would justify a writ of habeas corpus under 28 U.S.C. § 2241, the Court dismisses his petition on the grounds stated above.

13

**C.      Petitioner's supplemental pleading regarding his transfer to a Community Corrections Center**

In his initial petition, Petitioner's complaints included allegations that the BOP acted improperly in failing to consider the five factors discussed in 18 U.S.C. § 3621 and in delaying its determination regarding his pre-release custody under 18 U.S.C. § 3624(c).  See pages 12-13 supra.  The Court has already determined that these claims as brought in his original petition are moot.

In a supplemental pleading dated January 30, 2008, Petitioner requests permission to supplement his petition with events which occurred subsequent to his initial petition, namely, decisions regarding his placement in a Community Corrections Center (CCC).  Docket 31.  Within that document, Petitioner states that his "release date" should be June 30, 2008, but that instead the BOP is ordering him sent to the CCC on July 8, 2008, to accommodate the Fourth of July holiday weekend.  Docket 31, page 1. Petitioner cites to 18 U.S.C. § 3624(a), which states that a prisoner shall be released "on the date of the expiration of the prisoner's term of imprisonment," but that if this date is a holiday, the prisoner can be released on the last preceding workday.  See also 28 C.F.R. 571.30(D).   Application of this rule, states Petitioner, would require his "release" on July 3, 2008.  Petitioner also complains that he is entitled to "release" on June 30, 2008, because of his good-time credit.  Docket 31, page 2.

14

The Government's response addresses these allegations, stating that Petitioner is complaining about the date of his *transfer* from Yankton FPC to a halfway house, not the date of his *release from confinement.*  Docket 35, page 4 (emphasis added).  Based on the maximum good-time credit he could earn, Petitioner's scheduled release date may be as early as December 31, 2008, states the Government.  As the BOP approved a six-month CCC placement for Petitioner, it calculated his transfer date to the CCC as July 5, 2008.  Id. However, since that date falls on a holiday, the BOP authorized a transfer date of July 7, 2008, with his arrival at the CCC expected on July 8, 2008. "Because Dudley is being transferred, rather than being released from BOP custody, the release statutes and regulations he cites in favor of the July 5 date he wants are inapplicable."  Id. at 4-5.  On that question of Petitioner's placement in a CCC, states the Government, 18 U.S.C. § 3621 gives the BOP discretion regarding such a transfer to consider a variety of factors.  "BOP's decisions regarding Dudley's scheduled transfer to a halfway house are within BOP discretion, and are absolutely reasonable."  Id. at 6.

The Court agrees that the requirements of  18 U.S.C. § 3621(a) regarding release dates are not applicable to the question of when Petitioner begins his CCC placement.  Instead, the pertinent statute is 18 U.S.C. § 3624(c), which addresses placement in a re-entry center or home confinement.  That statute refers to such placements as "*pre*-release custody," making it clear that any time in such a placement is still part of the inmate's term of imprisonment and

15

prior to any date of release. See 18 U.S.C. § 3624(c) (emphasis added); see also
Elwood v. Jeter, 386 F.3d 842, 847 (8th Cir. 2004) (applying the § 3621 factors
governing "places of imprisonment" to CCCs in this case, when "both parties
agreed that CCCs are places of imprisonment"); id. at 846 n.2.

Both the earlier version of 18 U.S.C. § 3624(c), which permits a pre-
release placement of up to six months, as well as the recently-passed Second
Chance Act version, which authorizes a CCC placement of twelve months,
permit the BOP to transfer an inmate to a CCC near the end of his sentence for
the purposes of permitting him to adjust to and prepare for his entry into the
community.  Id.  Thus, the BOP's decisions regarding the timing of Petitioner's
transfer to another facility for pre-release custody need not comport with the
rules discussed in § 3624(a) regarding the release of an inmate from custody.
Petitioner's CCC placement is still pre-release custody under 18 U.S.C. §
3624(c), and that statute contains no requirements regarding transfer prior to
a holiday or weekend like those found in § 3624(a).  Thus, the BOP's decision
to delay Petitioner's transfer until after the holiday weekend is not improper.
Since Petitioner cannot establish that he is statutorily entitled to a July 5,
2008, or earlier transfer date to the CCC, his claims in his supplementary brief
must fail.

In his supplementary brief, Petitioner also seems to allege that the BOP
has made an error in calculating his good-time credit in relation to his July 8
transfer date.  Docket 31, page 2 (stating that the statute does not give the BOP

16

"unfettered discretion to delay inmates [sic] good-time credit release beyond June 30th, 2008"). However, good-time credit is considered by the BOP only in determining an inmate's ultimate release date. 18 U.S.C. § 3624(b). An inmate's good-time credit does not entitle him to early entry into a CCC, and the only way that good-time credit may intersect with the date of transfer to a CCC is when the BOP calculates the inmate's expected release date in accordance with any good time credit and then subtracts six months, pursuant to 18 U.S.C. § 3624(c), to find the earliest possible date the inmate can go to a CCC. Petitioner has not argued that the BOP has improperly calculated his good-time credit with regard to the December 31, 2008, release date provided by the Government. See Docket 35, page 1; see also Docket 36 ¶12. Further, Petitioner has not demonstrated that he has exhausted his administrative remedies with regard to any disputes about his good-time credit. Docket 36 ¶ 17. For these reasons, Petitioner is entitled to no remedy for the BOP's calculation of his good-time credit.

Finally, in several of his last filings with this Court, Petitioner raises another issue not previously raised, namely, that the BOP improperly interpreted the statute which provides that CCC placement is not to exceed six months.[3] Docket 39, page 2-3; Docket 41, page 2; Docket 42 (motion for

---

[3] The Government has not responded to these recent allegations from Petitioner that the BOP's interpretation of "six months" in 18 U.S.C. § 3624(c) is outside of the agency's statutory authority. The Court notes that it is not proper procedure for a petitioner to add more and more claims contesting the conditions of his confinement under 28 U.S.C. § 2241 with each new filing. However, as the

<u>Chevron</u> analysis); Docket 45, page 4-5.  He states that the BOP's interpretation that six months is equivalent to 180 days, instead of 182 days, is "arbitrary or unreasonably applied."  Docket 41, page 2; <u>see also</u> Program Statement 7310.04 at 8 (stating that "[a]n inmate may be referred up to 180 days, with placement beyond 180 days highly unusual"); <u>see also</u> Docket 45. "Congress meant for inmates to receive six months not 180 days," and "those 2.5 or 3 days differences [sic] offends Congress' intent."  Docket 42, page 3.

In reviewing an agency's interpretation of a statute it administers, this Court applies a <u>Chevron</u> two-step analysis.  See <u>Chevron U.S.A., Inc. v. Natural Res. Def. Council, Inc.</u>, 467 U.S. 837, 842-44, 104 S. Ct. 2778, 81 L. Ed. 2d 694 (1984).  First, the Court must determine "whether Congress has directly spoken to the precise question at issue. . . . If the intent of Congress is clear, that is the end of the matter; for the court, as well as the agency, must give effect to the unambiguously expressed intent of Congress."  <u>Chevron</u>, 467 U.S. at 842-43; <u>see also</u> <u>Fults v. Sanders</u>, 442 F.3d 1088, 1090 (8th Cir. 2006).  If Congress has not directly addressed the matter, the Court must then determine "whether the agency's [interpretation] is based on a permissible construction of the statute."  <u>Chevron</u>, 467 U.S. at 843; <u>see also</u> <u>Elwood v. Jeter</u>, 386 F.3d 842, 845 (8th Cir. 2004).

---

Court can dispose of all of Petitioner's claims today, the Court chooses to address such arguments for the purposes of completeness.

Here, the Court believes that Congress has directly spoken to this issue, in that it specified that inmates were not to spend more than six months in a CCC, and the Court believes that six months reasonably corresponds to 180 days.  However, even if the Court were to conclude that Congress has not directly spoken to the issue, and thus applies the second <u>Chevron</u> step, the Court finds that the BOP's policy equating six months with 180 days is a reasonable construction of the statute.  The average month has 30 days, and the Court believes that a different construction would lead to inconsistent results between inmates depending on the exact date of their release.  <u>See Bernitt v. Martinez</u>, 432 F.3d 868, 869 (8th Cir. 2005) (stating that when a statute is ambiguous, "we must defer to the BOP's interpretation if it is reasonable"); <u>James v. Outlaw</u>, 126 Fed. Appx. 758 (8th Cir. 2005) (stating that BOP regulation based on ambiguous statute was "a reasonable interpretation" and therefore habeas petition was dismissed).  Indeed, Petitioner's calculation of 182.5 days (183 in a leap year) is not based on the "six months" dictated in the statute, but on different language of a "half year," as he took the total days in a year and divided it by two, leading to a troublesome half-day which the BOP would have to accommodate.  The Court believes that the BOP's decision to interpret six months as 180 days is a permissible and reasonable construction of the statute.  Thus, the BOP's policy PS 7310.04 which interprets § 3624(c) passes this Court's <u>Chevron</u> analysis, and Petitioner fails to state a valid habeas claim on these grounds.

It is clear to this Court that the BOP has acted properly in designating a CCC placement for Petitioner and in making arrangements for his transfer there on July 7, 2008.  Therefore, Petitioner's petition based on these grounds is dismissed.

**D.     Motion to strike declaration**

Petitioner also filed a motion to strike Rita Butler's declaration, listing many reasons why the declaration was unhelpful as well as misleading and untruthful.  Docket 41.  Butler in her declaration states that she is a Case Manager at FPC Yankton assigned to Petitioner and describes the BOP process regarding transfers to CCCs.  Docket 36.  She states that Petitioner's unit team determined that he should be placed in a CCC for 180 days; after calculating a release date of December 31, 2008, based on his good conduct time, the team concluded that he should be transferred to a CCC on July 5, 2008, a Saturday. Id. at 2.  Since the BOP generally "does not transfer inmates on Saturdays or Sundays," his proposed transfer date was Monday, July 7, 2008, with a scheduled arrival date of July 8, 2008.  Id.  In his motion to strike, Petitioner reverts again to those statutes which address the BOP's process when a *release date* falls on a weekend; however, the Court has already determined that these are inapplicable in calculating an inmate's *transfer date* to a CCC.  See Docket 41, page 2; see also pages 14-16 supra.  Petitioner also states that PS 7310.04, cited by Butler, is inapplicable because it has been determined to be invalid in

light of changes subsequent to its 1998 adoption by the BOP.  Docket 41, page 2-3.

Petitioner's motion to strike is brought under Fed. R. Civ. P. 12(f), which provides that a court "may strike from a pleading . . . any redundant, immaterial, impertinent, or scandalous matter."  A motion to strike is "an extreme and disfavored measure," and the Court sees no reason to grant Petitioner's motion.  BJC Health System v. Columbia Cas. Co., 478 F.3d 908, 917 (8th Cir. 2007).  The Court does not believe that Ms. Butler's statements are either immaterial, impertinent, or scandalous; in fact, the Court agrees with her assertions about the proper BOP rules governing Petitioner's transfer to a CCC.  Additionally, the Court does not believe that  any alleged misstatements in the declaration are significantly prejudicial to Petitioner regarding the decision today.  For these reasons, this motion to strike is denied.

**E.     Other motions**

Petitioner has filed many other motions, which are now moot in light of the Court's decision today to dismiss his § 2241 petition.  These include a motion requesting magistrate referral (Docket 20), motion for a hearing on his § 2241 petition (Docket 24), motion for leave to conduct discovery (Docket 29), motion for leave of court for production of documents (Docket 30), second motion for hearing (Docket 33), motion to appoint counsel (Docket 40), and motion for Chevron analysis (Docket 42).  The Court dismisses all of these

21

motions as moot in light of its decision to dismiss Petitioner's petition for writ of habeas corpus as well as each of the legal findings it made in this order.

Petitioner has also filed a motion to amend or alter the judgment, and motion to reconsider the order, seeking a reconsideration of this Court's order that jurisdiction was lost when he left the District of South Dakota and reestablished when he was transferred back into the District of South Dakota. Docket 32 (referring to Docket 22). The Court denies this motion without discussion, on the same grounds stated in its earlier order, Docket 22.

For the reasons stated above, it is hereby

ORDERED that Petitioner's application for writ of habeas corpus, Docket 1, is DENIED in all regards.

IT IS FURTHER ORDERED that Petitioner's motion to strike, Docket 41, is DENIED.

IT IS FURTHER ORDERED that Petitioner's motion for reconsideration, Docket 32, is DENIED.

IT IS FURTHER ORDERED that the remaining motions in this matter are DENIED AS MOOT.

Dated May 30, 2008.

BY THE COURT:

/s/ *Andrew W. Bogue*

ANDREW W. BOGUE
SENIOR DISTRICT JUDGE